UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SHERRY COOPER, CYNTHIA JONES,
PAMELA JACKSON, PAIGE VERDUCCI,
WILSON AVILES, KRISTINE WOLANSKE,
CATHY WHITTINGTON, on behalf of themselves
and all others similarly situated, and William
O'Driscoll as representative of THE
INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS,

                 Plaintiffs,              ORDER
                                                              02-CV-3477
  - against -                                               (NG) (KAM)

TWA AIRLINES, LLC, AMERICAN
AIRLINES, INC., and THE ASSOCIATION
OF PROFESSIONAL FLIGHT ATTENDANTS,
John Ward as Representative,

                 Defendants.
------------------------------------------------------------------x
**GERSHON, United States District Judge:**

      The history of this action has been set forth in two prior decisions of this court. *See Cooper v. TWA Airlines, Inc.*, 274 F.Supp.2d 231 (E.D.N.Y. 2003) ("*Cooper I*"); *Cooper v. TWA Airlines, Inc.*, 349 F.Supp.2d 495 (E.D.N.Y. 2004) ("*Cooper II*"). Briefly, plaintiffs are former TWA Airlines, Inc. ("TWA") flight attendants who were incorporated into the workforce of defendant American Airlines, Inc. ("American") following American's acquisition of TWA. (Together, American and defendant TWA Airlines, LLC, the successor company to TWA, are referred to as the Company Defendants.) Subsequently, in July 2003, plaintiffs were furloughed pursuant to the terms of a Restructuring Agreement entered into by American and plaintiffs' union, defendant Association of Professional Flight Attendants ("APFA"). Plaintiffs' Amended Complaint asserts claims arising from conduct in the period leading to American's acquisition of TWA and the incorporation of plaintiffs into American's workforce. A Supplemental Complaint deals solely with the events

surrounding the negotiation and ratification of the Restructuring Agreement.[1]  In *Cooper I*, Judge Carol Bagley Amon of this court denied plaintiffs' request for a preliminary injunction, premised on three of the claims in the Supplemental Complaint, to block the implementation of the Restructuring Agreement and their furlough.  Subsequently, the case was reassigned to me.  On November 23, 2004, in *Cooper II*, I granted defendants' motion to dismiss plaintiffs' Amended Complaint.

Presently before the court is the Company Defendants' motion to dismiss counts 11, 12, and 14 of plaintiffs' Supplemental Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Supplemental Complaint consists of a total of five claims, enumerated Counts 10 through 14, relating to conduct surrounding the adoption of the Restructuring Agreement.  In brief, the Supplemental Complaint alleges the following: After the attacks of September 11, 2001, American experienced severe financial difficulties.  In an attempt to avoid bankruptcy, American requested concessions from its unions, including $340 million in labor concessions from APFA.  At that time, APFA represented all of American's flight attendants, including the former TWA flight attendants who had been incorporated into American's workforce upon American's purchase of TWA in 2001.  The former TWA flight attendants were at the bottom of American's flight attendant seniority list as a result of agreements made during the merger of TWA and American.

A negotiating committee from APFA met with American to develop a concession plan.  The

---

[1] Three other related lawsuits pending before me, *Ford v. Association of Professional Flight Attendants*, 03-CV-4987, *Lindsay v. Association of Professional Flight Attendants*, 04-CV-634, and *Marcoux v. American Airlines, Inc.*, 04-CV-1376, also concern American's 2003 reorganization.  Plaintiffs in those cases filed a consolidated class action complaint on July 12, 2004 and an amended complaint on November 30, 2004.  A motion to dismiss certain counts of the First Amended Consolidated Class Action Complaint is pending.

concession plan included a "headcount reduction" that provided for the furlough of a number of flight attendants based on seniority. In practice, this provision would result in the furlough of all of the former TWA flight attendants remaining in the American workforce. Another provision eliminated severance pay for all furloughed flight attendants. Plaintiffs contend that APFA discriminated against the former TWA flight attendants in favor of existing American flight attendants, regarding the TWA flight attendants as an expendable "furlough cushion," since their position at the bottom of the seniority list meant that they would be furloughed before American employees with fewer total years of service.

The concession plan was submitted to APFA members for a vote as the Restructuring Agreement after a meeting between the negotiating committee and the APFA board of directors on March 31, 2003. The voting process was to be closed and all votes tallied by April 15, 2003. While the vote was ongoing, APFA encouraged its members to vote "yes" on the Agreement. When the votes were tallied on April 15, the Restructuring Agreement had been rejected by APFA members. However, citing difficulties and confusion during the voting process, including additional changes to the Restructuring Agreement while the vote was ongoing, APFA agreed to extend voting for an additional day. During the extended voting, American and APFA actively campaigned for approval of the Restructuring Agreement, citing the imminent threat of bankruptcy if it were not adopted. At the close of the extended voting period, the Restructuring Agreement was approved by a majority of APFA flight attendants. Ultimately, pursuant to the Restructuring Agreement, all of the former TWA flight attendants and additional American flight attendants who were next-most junior on the seniority lists, were furloughed without severance pay.

The Supplemental Complaint alleges that both American and APFA actively solicited "yes"

3

votes on the Restructuring Agreement during the extended voting period by invoking the threat of American's imminent bankruptcy absent the concessions in the Agreement. Plaintiffs also allege that American withheld information about certain supplemental retirement benefits that American had approved for its executives that would be protected in the event American filed for bankruptcy.

Based on these facts, plaintiffs bring the following claims: Count 10 alleges that APFA breached its duty of fair representation to plaintiff union members under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.*, in that APFA purposely selected and agreed to concessions that disproportionately and unjustly resulted in the loss of jobs, without severance pay, for all of the remaining former TWA flight attendants with no proportionate loss of jobs to the original American flight attendants. Count 11 alleges that American aided and abetted APFA's breach of its fiduciary duty to plaintiffs by colluding with APFA to reject the original "no" vote on the Restructuring Agreement and actively interfering with the ratification process. Count 12 alleges a fraud claim against American and its former CEO, Don Carty, in that they intentionally withheld information concerning an executive bonus package, approved by the American board in October 2002, while representing that they had provided the most complete and reliable information available to American during the negotiation process. Count 13 alleges a breach of contract claim against APFA for violation of the APFA constitution's provisions governing the procedure to vote on the proposed Restructuring Agreement. Finally, Count 14 alleges intentional interference with contractual relations by American and Carty, in that defendants intentionally encouraged and procured APFA's breach of the APFA constitution by threatening APFA with American's bankruptcy if APFA did not extend the vote on the ratification of the Restructuring Agreement.

Counts 10 and 13, which are plead solely against APFA, are not challenged in the instant

4

motion. The Company Defendants argue that Counts 11, 12 and 14, which arise under state law, are preempted by the RLA and must be dismissed. In her decision on plaintiffs' motion for a preliminary injunction, Judge Amon held that

> plaintiffs' aiding and abetting claim [Count 11] is indistinguishable from a hybrid claim against APFA and AA for breach of the duty of fair representation under the RLA. As a result, plaintiffs' state law aiding and abetting claim is preempted under [*San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959)] because it represents conduct that is the clear subject of federal labor law; namely, it is virtually identical to a federal cause of action for breach of the duty of fair representation.

*Cooper I*, 274 F.Supp.2d at 249. Judge Amon also held that Count 12, plaintiffs' state law fraud claim, is subject to *Garmon* preemption because "[t]he fraudulent conduct charged by plaintiffs constitutes an allegation of bad faith bargaining on the part of Carty and [American]," and "such an allegation clearly involves conduct that is actually, and at the very least arguably, covered by the RLA." *Id.* at 249-50. I agree with Judge Amon's conclusions.

Count 14 of the Supplemental Complaint, which alleges intentional interference with contractual relations, was not addressed by Judge Amon in her decision on the motion for a preliminary injunction. However, this claim is based on the same conduct underlying plaintiffs' aiding and abetting claim in Count 12, and, like Count 12, is indistinguishable from a hybrid claim against APFA and American for breach of the duty of fair representation. Hybrid claims are governed by federal law, *see Czosek v. O'Mara*, 397 U.S. 25 (1970), and, thus, are subject to the same preemption principles described in *Cooper I* and *Cooper II*. Although plaintiffs have chosen not to bring a hybrid duty of fair representation claim against American, they cannot escape preemption by federal law of state law claims that are the equivalent of a hybrid claim.

Briefly, the process of collective negotiation of agreements governing the terms of

employment between air carriers and their employees is governed by federal law in the form of the RLA.  *See Cooper II*, 349 F.Supp.2d at 504-08.  Therefore, state law claims that seek to regulate defendants' conduct in negotiating an employment agreement are preempted.  That principle applies fully to the state law claims at issue here, each of which seeks to regulate the conduct of an air carrier or a union in the course of collective bargaining.  While plaintiffs' claims in the Supplemental Complaint are not identical to those at issue in *Cooper II*, plaintiffs, recognizing that the identical principles of law are applicable, incorporate their earlier arguments against preemption here.  For the reasons set forth in detail in *Cooper II*, those arguments are rejected.

In sum, defendants' motion to dismiss Counts 11, 12 and 14 of plaintiffs' Supplemental Complaint is granted.

**SO ORDERED.**

*/s/ Nina Gershon*
**NINA GERSHON**
**United States District Judge**

**Dated:** **July 18, 2005**
**Brooklyn, New York**